# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Donald Smith (M-52307), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-7713 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| James Morrison & Mrs. Pondexter, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donald Smith has sued two Cook County correctional staff members, James Morrison and Mrs. Pondexter, alleging that they did not appropriately respond to his reports of a sewage backup in his cell while he was a pretrial detainee in the Cook County Jail ("Jail") in early 2019. Defendants Morrison and Pondexter have moved for summary judgment [25] on the premise that Smith did not properly exhaust the institutional grievance process before filing this lawsuit. For the reasons discussed below, the motion [25] is granted. For the reasons provided in the Court's order of April 14, 2021 [34], and because this case is dismissed, Plaintiff's renewed motion for appointment of counsel [38] (which is identical to the one filed on March 23, 2021 [31]) is denied. A final judgment will enter under Federal Rule of Civil Procedure 58. Civil case terminated.

## I.  Background

### A.  Local Rules for Summary Judgment

This Court's Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue," *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009), which must include "short

numbered paragraphs" with "specific references" to supporting materials. N.D. Ill. L.R. 56.1(a). The opposing party "is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco*, 559 F.3d at 632 (citing N.D. Ill. L.R. 56.1(b)(3)(B)). "All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C).

Counsel for Defendants submitted and served on Smith a statement of uncontested facts, as well as a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. [27, 28.] The Notice explains the consequences of failing to properly respond to a motion for summary judgment and Local Rule 56.1(a)(3) statement of material facts.

Smith did not respond to Defendants' statement of facts but submitted two documents generally parroting the formatting of Defendants' motion and supporting materials, in which he includes arguments, facts, and documents opposing Defendants' motion. [30, 32, at 2-4, 15-16.] Smith also filed a "counter-statement of material facts" [39] directed at Defendants' reply. Smith's *pro se* status does not excuse his non-compliance with the rules for responding to a summary judgment motion. See *McNeil v. United States*, 408 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). The Court accordingly accepts Defendants' version of the facts to the extent that it is properly supported by the evidence, *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012), but sets forth the facts as favorably to

Smith as the record and Local Rule 56.1 permit. The parties in any event do not dispute most of the facts relating to Smith's steps toward exhaustion of administrative remedies.

The Court also considers additional factual assertions in Smith's submissions to the extent that he points to evidence in the record or could properly testify about relevant matters. See *James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(4)). That said, a judge must "scrutinize the substance of an affidavit offered in response to a summary-judgment motion to determine whether a reasonable jury could rely on the factual statements it contains," *id.*, and "disregard a 'sham' affidavit." *Id*. at 315-16 (citations omitted).

### B. Relevant Undisputed Facts

At all pertinent times in 2019, Smith was detained at the Jail. [Defs. LR 56.1 Stmt. ¶ 1, 9.] In this lawsuit, he alleges that Defendants, a correctional officer and a correctional rehabilitation worker, failed to adequately address his complaints of sewage backups in his cell #4218 in Division 10 Tier 4B. [See 8, 9.]

The Jail's formal grievance procedures are outlined in the Inmate Information Handbook that Smith received when booked into the Jail. [*Id*. ¶¶ 19, 22, 24.] The process requires a detainee to complete and submit an inmate grievance form within fifteen days of a grievable offense. [*Id*. ¶ 20.] The detainee must then appeal the response within 15 days of receipt to exhaust administrative remedies. [*Id*. ¶ 20.] Inmate grievance forms, which were available in living units or from correctional rehabilitation workers ("CRWs") reiterated the timing and appeal requirements. [*Id*. ¶¶ 22, 23; see 30, at 2.] Smith submitted at least ten grievances while detained in the Jail, four of which he appealed. [Defs. LR 56.1 Stmt. ¶¶ 25-27.]

On February 25, 2019, Smith submitted a grievance indicating that, two days earlier, his cell had flooded. [*Id*. ¶ 10.] He was moved to a new cell on February 28, 2019. [*Id*. ¶ 9.] On March 5, 2019, Jail staff responded to Smith's grievance. [*Id*. ¶ 11.] Smith did not appeal. [*Id*. ¶ 12.] That day, March 5, 2019, he submitted a second grievance regarding another cell overflow that had occurred in his prior cell on February 26, 2019.[1] [*Id*. ¶ 13.] Jail staff responded to his second grievance on March 12, 2019. [*Id*. ¶ 14.] He did not appeal. [*Id*. ¶ 15.] Smith provides several reasons for not appealing those grievances, which will be addressed below.

## II. Discussion

### A. Summary Judgment Motions under PLRA Exhaustion Rules

Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court ruling on a motion for summary judgment construes all facts and reasonable inferences in the light most favorable to the nonmoving party (here, Smith). "[A] *genuine* issue of material fact," though, "cannot be conjured out of nothing." so a party is prohibited "from submitting" a "sham" affidavit * * * that contradicts the party's prior deposition or other sworn testimony." *James*, 959 F.3d at 316 (emphasis in original, citation omitted).

---

[1] Smith does not challenge these dates, which appear consistent with the documents. In his second grievance, dated 2-26-19, Smith says he told "a white shirt about the problem 2-28-19"; the CRW received it 3/5/19. [32, at 12.]

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust administrative remedies before initiating a federal civil rights lawsuit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility unless such administrative remedies as are available are exhausted."). Thus, if a correctional facility has an internal administrative grievance system through which an inmate can seek to correct an issue, the inmate must utilize that system before filing suit in federal court. See, e.g., *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). This means that the inmate must file both the grievance and appeal in accordance with facility procedures. See *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (explaining that, to exhaust administrative remedies, inmate must submit grievances and appeals at time and in manner specified by institutional rules).

B.     **Application of Standard to Facts of This Case**

Smith did not appeal the grievance responses he received as to sewage backups in Cell #4218, despite his awareness that the institutional process required, and the grievance form instructed, that an appeal was necessary to exhaust administrative remedies. [Defs. LR 56.1 Stmt. ¶¶ 10-15, 19-24; see Pl. Feb. 19, 2021 Dep., [27-6], at 31:1-14; 32:11-13; 35:1-17; 53:10-14.] Smith provides several reasons for not filing an appeal. First, he accuses both Defendants of failing to initiate "emergency" protocols in response to his complaint regarding the sewage backup in his cell. [30, at 5; 32, at 4.] He does not explain any relevance that omission may have to the exhaustion of administrative remedies, and none is discernable, given the clear indication on the grievance forms that they were marked as "grievances" [32, at 9-14], and the undisputed fact that all grievances must be appealed within 15 calendar days [30, at 2].

5

Second, despite the forms' clear indication of the timeline for appeals and that "appeals must be filed in all circumstances in order to exhaust administrative remedies" [30, at 2], Smith insists that his cell relocation "stop[ped] the appeal process and merit because an appeal has to have merit." [*Id*., at 3.] Smith suggests that he believed he could not continue the grievance process after he had been moved to another cell is inconsistent with his own conduct in turning in a second grievance about the first cell *after* his cell relocation. [See Defs. LR 56.1 Stmt. ¶ 13; 32, pg. 12]. More importantly, the grievance form itself—the only evidence he incorporates in support of his argument—does not include the "merits" limitation for appeals that he references. [*Id*., at 9-14.] Smith provides no other support for the existence of such an appeals limitation.

The cell relocation unquestionably did not fully satisfy Smith, who still seeks relief (monetary compensation) through this lawsuit. A failure to exhaust is not overlooked merely because other relief he might seek, such as money damages, would be unavailable in the grievance process itself. See *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (explaining that PLRA requires prisoners to exhaust administrative remedies "even when the relief sought—monetary damages—cannot be granted by the administrative process") (citing *Booth v. Cherner*, 532 U.S. 731, 734 (2001)); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (explaining that exhaustion is "mandatory" (quoting *Woodford*, 548 U.S. at 85)). Thus, Smith needed to exhaust the available remedies by appealing since he still sought relief after his cell relocation.

Exhaustion is not excused merely because Smith personally may have been confused about the merits of an appeal. See *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) ("As the Eighth Circuit has observed, 42 U.S.C. § 1997e(a) 'says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him. The

6

statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.'" (quoting *Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000))); *Chellette*, 229 F.3d at 688 (explaining that, because prisoner did not exhaust available remedies, "his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there'" (citation omitted)). Smith's failure to timely file an appeal forfeited his appeal. See *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited.").

Smith's third explanation, that he did not appeal because Defendant CRW Pondexter "intimidat[ed]" him by twice refusing to accept an appeal [32, at 15], could have affected the analysis, 42 U.S.C. § 1997e(a) (providing that inmates must exhaust "available" administrative remedies). This explanation, though, contradicts Smith's sworn deposition testimony regarding his failure to appeal and thus is inadmissible. In his deposition, Smith stated and reiterated that he did not appeal because he "*felt [he]* had no reason to" given his cell relocation; on each reiteration, despite being pressed for reasons, his personal feelings were all he provided for not appealing. [27-6 (Pl. Feb. 19, 2021 Dep.) at 39:4-16 (emphasis added); see also *id*. at 31:7-32:22, 35:2-22; 52:5-53:20.] Defense counsel also asked Smith two pointed questions to ascertain whether, "if [he] did want to appeal, [he] did have access to the form and writing utensils to appeal," and "would have been able to give the completed form to a proper person like a CRW or a supervisor." [*Id*. at 55:1-7.] Smith answered "[c]orrect" to both. [*Id*. at 55:4, 8.] Smith's concessions that he had everything necessary to appeal, including access to a CRW or other person to accept it, directly contradict his summary-judgment submission attributing his failure to appeal

7

to an inability to return it. This late-hour shift in testimony does not create a genuine issue of material fact for summary judgment. See *Abraham v. Washington Grp. Int'l, Inc.*, 766 F.3d 735, 741 (7th Cir. 2014) ("[A] deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving a credible explanation for the discrepancies."); see also *James*, 959 F.3d at 315 (explaining that, in absence of exceptions not relevant here, courts should "disregard a 'sham' affidavit—typically an affidavit that contradicts prior deposition testimony").

Smith characterizes his factual about-face as "an application of the basic principle that a plaintiff is free to assert alternative or conflicting – defenses" or "as many defenses as he had or thought he had." [39 (citing *People v. Everette*, 565 N.E.2d 1295, 1298 (Ill. 1990), which, in part, states that "a [criminal] defendant is entitled to instructions on those defenses *which the evidence supports*" (emphasis added)).] But accepting that a party may offer conflicting legal claims or theories does not authorize a party to rewrite sworn facts, on which the moving party understandably expects to be able to rely. This is exactly what the sham-affidavit rule forbids— an otherwise unexplained reversal of unambiguous deposition testimony in an attempt to stave off summary judgment. *James*, 959 F.3d at 315-16. Smith thus has not demonstrated, through admissible evidence, that the appeals process was unavailable to him.

Smith finally requests that the Court permit him to exhaust his administrative remedies by now pursuing appeals. While the Court is sympathetic to his situation, "[s]ection 1997e(a) says that exhaustion must precede litigation." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). The PLRA thus does not allow Smith to exhaust his administrative remedies for a given claim after he has filed his lawsuit.

Accordingly, the Court finds no genuine issue of material fact concerning Smith's failure to exhaust available administrative remedies with respect to the claims in his complaint and no admissible evidence that would excuse his failure to exhaust. Although Defendants seek dismissal with prejudice [35, at 11], the Seventh Circuit has unequivocally instructed that "*all* dismissals under § 1997e(a) should be without prejudice." *Ford*, 362 F.3d at 401; see also *Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) (explaining that "dismissal under § 1997e(a) for failure to exhaust must be without prejudice * * * even if exhausting administrative remedies will prove to be impossible").

## IV. Conclusion

For the reasons stated above, the Court grants Defendants' motion for summary judgment [25] and directs the Clerk to enter final judgment under Federal Rule of Civil Procedure 58 dismissing this case without prejudice. For the reasons provided in the Court's order of April 14, 2021 [34], and because this case is dismissed, Plaintiff's renewed motion for appointment of counsel [38] (which is identical to the one filed on March 23, 2021 [31]) is denied. Recruitment of counsel was not warranted as to this threshold and relatively straightforward issue of exhaustion, particularly given Smith's personal involvement, demonstrated ability to follow court orders, and pleadings to date.

If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. See Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. See *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes"

because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. See Fed. R. App. P. 24(a)(1).

Dated: July 7, 2021

_____
Robert M. Dow, Jr.
United States District Judge